UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUCKY GIRL BREWING COMPANY –
CROSS ROADS LLC,

    Plaintiff,                                             Case No. 1:24-cv-140

v.                                                                Hon. Paul L. Maloney

SENTINEL INSURANCE COMPANY,
LTD., *et al.*,

    Defendants.
_____/

## **OPINION**

This suit stems from an insurance dispute. Plaintiff Lucky Girl Brewing Company – Cross Roads LLC ("Lucky Girl")'s restaurant and brewery (the "Brewery") suffered damage from a coincidental fire. Lucky Girl submitted a $947,073.00 proof of loss under various coverages to its insurance company, Sentinel Insurance Company, LTD. ("Sentinel"). Included in its coverages, were losses to a "rear building" with a $259,700.00 building replacement limit and a $57,200.00 limit for its business personal property. Overall, Sentinel paid Lucky Girl $583,570.47, refusing to cover damage to the rear building. Lucky Girl then filed this suit. Lucky Girl asserted a negligence and breach of contract claim against Sentinel and LR Windsor, its insurance agent. (Compl., ECF No. 1-1.) LR Windsor and Lucky Girl settled the negligence claim, and this Court dismissed LR Windsor as a party. (ECF Nos. 27, 34.) Sentinel filed a combined motion to dismiss and motion for summary judgment, moving to dismiss the negligence claim and moving for summary judgment on the breach of contract claim. (ECF No. 31.) The Court will grant Sentinel's motion to dismiss but deny its motion for summary judgment.

## I. BACKGROUND

In 2015, Lucky Girl entered a lease for buildings at 34016 M-43, Paw Paw, Michigan 49079 (the "Lease"). (Wescott Dep. 6-7, ECF No. 37-6; Property Lease, ECF No. 31-3, PageID.561.) Lucky Girl entered the Lease to build the Brewery. (Wescott Dep. 6-7.) Under the Lease, Lucky Girl rented the following four buildings from Don Mastenbrook: a feed store, a concrete building, a winery, and a greenhouse. (*See* Wescott Dep. 10, 12-15.) Though in reality, Lucky Girl leased only the feed store.[1] (*Id.*) A chicken coop also existed on the property, but that was not subject to the Lease.[2] (*Id.*)

Around this time, Lucky Girl began constructing the Brewery, first replacing the feed store with a tap room. (*See id.* at 13-15, 23-24.) By 2017, Lucky Girl had constructed and completed the Brewery. (*Id.* at 20.)

Two years after the Brewery was completed and opened, Lucky Girl insured it through Sentinel for the 2019–2020 period.[3] (*See id.* at 19-20.) On May 9, 2019, Lucky Girl, acting through its insurance agent at LR Windsor, Todd Johnson, insured $177,700.00 of business personal property at "Location: 001[,] Building: 001[,]" 34016 M-43, Paw Paw, MI 49079; the Policy described the business as a "Craft Brewery." (Policy Period 2019–2020, ECF No. 38-6, PageID.813.) On August 30, 2019, Lucky Girl and Johnson endorsed the Policy to include a "rear building" at 34016 M-43 Paw Paw, Michigan 49079, identified as "Location: 002[,] Building: 001," and described as a "Craft Brewery." (Endorsement Policy Change 004, ECF No. 38-10,

---

[1] Lucky Girl supposedly entered into another lease for the concrete building in 2017. (Wescott Dep. 12.)

[2] Lucky Girl, over time, improved this structure and transformed it into a farm stand: "Lucky Girl built the [f]arm [s]tand. It was actually a chicken coop that we, that Lucky Girl improved." (Wescott Dep. 13.) However, it was never subject to a lease. (Wescott Dep. 14.)

[3] The policy is identified as 83 SBA NX6906 (the "Policy"). (Policy Period 2022–2023, ECF No. 1-1, PageID.32.)

PageID.827-28.) This endorsement insured the rear building for a building replacement limit of $225,000.00 and $50.000.00 for business personal property. (*Id.*, PageID.828.)

Then, for the 2022–2023 period, Lucky Girl and Johnson increased the Policy for both locations. Lucky Girl increased its insurance to $513,600.00 for its business personal property at "Location: 001, Building: 001." (Policy Period 2022–2023, PageID.32.) The Policy again described the building at this location as a "Craft Brewery." (*Id.*) The Policy included coverage for the "rear building" at 34016 M-43, Paw Paw, Michigan 49079, too. (*Id.*, PageID.34.) The rear building was described as a "Craft Brewery," and marked as "Location: 002[,] Building: 001." (*Id.*, PageID.34.) Lucky Girl increased the latter building's replacement limit to $259,700.00 and $57,200.00 for business personal property. (*Id.*)

On November 5, 2022, a windstorm damaged two structures at 34016 M-43. (Wescott Dep. 29.) The storm damaged the greenhouse and farm stand. (*Id.* at 28.) On behalf of Lucky Girl, Johnson reached out to one of Sentinel's claims representatives for the damage to the farm stand under the Policy. (Todd Johnson and Michelle Bailey Emails, ECF No. 38-15, PageID.888-90.) A Sentinel claims representative, Michelle Bailey, emailed Johnson, asking him to "confirm which buildings at the loss location is location 1 and location 2-rear building." (*Id.*, PageID.889.) Johnson responded, "Building 1 – Main is Brewery and tap room – this had no damage" and "Building 2 – Farmstand – this had damage in the storm[.]" (*Id.*, PageID.888.) Sentinel paid Lucky Girl $13,435.05 for the actual cash value of the farm stand. (Actual Cash Value Payment Receipt, ECF No. 38-16.)

On January 23, 2023, a fire damaged the Brewery, leaving it a total loss. (*See* Wescott Dep. 30.) Lucky Girl submitted a sworn statement for its proof of loss of $947,073.00 to Sentinel under the Policy. (ECF No. 37-2, PageID.633.) Lucky Girl included in its coverages, the losses to the rear building in the amount of $259,700.00, along with $57,200.00 in business personal property.

3

(*Id.*, PageID.634.)  Lucky Girl claims that Sentinel has paid only $583,570.47 of the $947,073.00 owed under the Policy.  (Resp. in Opp'n to Mot. to Dismiss, ECF No. 37, PageID.621.)

Lucky Girl consequently filed this suit against Sentinel and LR Windsor in Michigan's Van Buren County Circuit Court.  Sentinel removed the suit to this Court under 28 U.S.C. §§ 1332 and 1441.  (Notice of Removal, ECF No. 1, PageID.1-3.)  Lucky Girl alleges that LR Windsor was negligent in insuring its buildings.  (Compl., PageID.14.)  It alleges that Sentinel was negligent for the same conduct.  (*Id.*)  Lucky Girl alleges a breach of contract claim solely against Sentinel, claiming that Sentinel breached its duty to pay Lucky Girl's claim for losses in total under the Policy.  (*Id.*, PageID.15.)  Lucky Girl settled its negligence claim against LR Windsor, so, this Court dismissed LR Windsor as a party.  (ECF Nos. 27, 34.)

Sentinel filed a motion to dismiss Lucky Girl's negligence claim and a motion for summary judgment to dispose of the breach of contract claim.  (ECF No. 31.)  Lucky Girl, in its opposition brief to Sentinel's motion for dismissal and summary judgment, conceded that it failed to state a negligence claim against Sentinel but maintains that summary judgment is improper for its breach of contract claim.  (ECF No. 37, PageID.624-25.)

## II. LEGAL STANDARD

A trial court should grant a motion for summary judgment only in the absence of a genuine dispute of any material fact and when the moving party establishes it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the burden of showing that no genuine issues of material fact exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  To meet this burden, the moving party must identify those portions of the pleadings, depositions, answers to interrogatories, admissions, any affidavits, and other evidence in the record demonstrating the lack of a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1); *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018).  The moving party may also meet its burden by showing the

4

absence of evidence to support an essential element of the non-moving party's claim. *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 543 (6th Cir. 2014).

When faced with a motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Pittman*, 901 F.3d at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). The court must view the facts and draw all reasonable inferences from those facts in the light most favorable to the non-moving party. *Maben v. Thelen*, 887 F.3d 252, 263 (6th Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In resolving a motion for summary judgment, the court does not weigh the evidence and determine the truth of the matter; the court determines only if there exists a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson* 477 U.S. at 249). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### III. ANALYSIS

The question is whether "rear building" unambiguously refers to the farm stand. The Court analyzes this issue under Michigan law.[4]

#### A.

"Under Michigan law, '[t]he proper interpretation of a contract is a question of law. . . .'" *Citizens Ins. Co. of the Midwest v. McNeeley*, No. 23-1794, 2025 WL 1178387, at *1 (6th Cir. Apr. 23, 2025) (quoting *Wilkie v. Auto-Owners Ins.*, 664 N.W.2d 776, 780 (Mich. 2003)). "Michigan courts interpret insurance contracts 'the same as any other contract.'" *Id.* (quoting *Auto-Owners*

---

[4] This court sits in diversity jurisdiction. In diversity suits, federal courts apply the substantive law of the forum state. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008) (citing *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003)). This rule applies to actions arising from disputes over insurance contracts. *Talley v. State Farm Fire and Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000). Accordingly, Michigan law governs the resolution of the dispute.

5

*Ins. v. Churchman*, 489 N.W.2d 431, 433 (Mich. 1992)). "The language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase. When the policy language is clear, a court must enforce the specific language of the contract." *McGrath v. Allstate Ins. Co.*, 802 N.W.2d 619, 621-22 (Mich. 2010) (citations omitted). The goal is to "'honor the intent of the parties.'" *McNeeley*, 2025 WL 1178387, at *1 (quoting *Klapp v. United Ins.*, 663 N.W.2d 446, 456 (Mich. 2003)). When interpreting insurance policies, courts assign "the words in the contract their ordinary and plain meaning if such would be apparent to the reader of the instrument." *Auto Owners Ins. Co. v. Seils*, 871 N.W.2d 530, 539 (Mich. 2015) (internal quotation marks omitted).

"Michigan courts consistently hold that an insurance contract is ambiguous when 'its words may reasonably be understood in different ways.'" *Cont'l Cas. Co. v. May Dep't Stores Co.*, 138 F. App'x 763, 766 (6th Cir. 2005) (quoting *Farm Bureau Mut. Ins. Co. v. Nikkel*, 596 N.W.2d 915, 919 (Mich. 1999)). "Thus, when a fair reading of the contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand that there is no coverage under the same circumstances, the contract is ambiguous." *Seils*, 871 N.W.2d at 539 (cleaned up). Put differently, an ambiguity may exist "when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the "necessity for interpretation or a choice among two or more possible meanings." *Shay v. Aldrich*, 790 N.W.2d 629, 641 (Mich. 2010) (internal quotations omitted). That the parties disagree about the proper interpretation of a contract, however, "does not, in itself, establish an ambiguity." *Gortney v. Norfolk & W. Ry. Co.*, 549 N.W.2d 612, 615 (Mich. 1996).

If the contract is ambiguous, Michigan courts find "that the meaning of an ambiguous contract is a question of fact for the jury." *Klapp*, 663 N.W.2d at 453 (citing *Hewett Grocery Co. v. Biddle Purchasing Co.*, 286 N.W. 221 (Mich. 1939)). "[W]here its meaning is obscure and its

6

construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury. . . ." *Id.* That said, "[w]here a contract is to be construed by its terms alone, it is the duty of the court to interpret it." *Id.* Only when the language is truly ambiguous shall it be construed "'against the drafter, i.e., the insurer.'" *McNeeley*, 2025 WL 1178387, at *1 (quoting *Wilkie*, 664 N.W.2d at 787).

### B.

With this guidance in mind, the Court turns to the language in the Policy. The Policy provides coverage for "direct physical loss of or physical damage to Covered Property at the premises described in the Declarations (also called 'scheduled premises' in this policy) caused by or resulting from" a fire. (Policy Period 2022-2023, PageID.51.) It defines "Covered Property as . . . the following types of property for which a Limit of Insurance is shown in the Declarations":

> **a. Buildings**, meaning only building(s) and structure(s) described in the Declarations, including:
>     (1) Completed additions;
>     (2) Permanently installed:
>         (a) Fixtures;
>         (b) Machinery; and
>         (c) Equipment;
>     (3) Outdoor fixtures . . .
>
> **b. Business Personal Property** located in or on the building(s) described in the Declarations at the "scheduled premises" or in the open within 1,000 feet of the 'scheduled premises,' including:
> . . .
>     (3) Property of others that is in your case, custody or control;
>     (4) 'Tenant Improvements and Betterments' . . .

(*Id.*) This definition of "Buildings" is tied to the Policy's declarations pages, which contain the following:

> Location: 001 Building: 001
> 34016 M-43
> PAW PAW MI 49079
> Description of Business:
> Craft Brewery

7

> . . .
> Location: 002 Building: 001
> 34016 M-43 Rear Building
> PAW PAW MI 49079
> Description of Business:
> Craft Brewery

(*See id.*, PageID.32-41.)

When viewing the facts in the light most favorable to the non-moving party—Lucky Girl—the Court finds that the Policy is ambiguous and capable of different interpretations.

On the one hand, consistent with Sentinel's motion, it can be interpreted that the "rear building" refers to the farm stand. Lucky Girl filed a claim on the farm stand under the Policy when it was damaged in the 2022 windstorm, identified it as the rear building, and Sentinel paid Lucky Girl the actual cash value of the farm stand. Therefore, it would be reasonable to believe that the parties intended that the farm stand is the rear building. This notion is also supported by the fact that Lucky Girl's insurance agent expressly identified the farm stand as the rear building.

On the other hand, it would be reasonable to say that the rear building is not the farm stand. A jury could find that the parties did not intend for the farm stand to be considered the rear building. For starters, as Wescott testified in his deposition, Lucky Girl does not own or rent the farm stand. (Wescott Dep. 14-15.) And obtaining and maintaining $259,000.00 of building replacement insurance on a structure the insured does not own or rent, barely worth $13,500.00, would defy all logic. Even Sentinel was apprehensive of "charging [Lucky Girl] a building premium on a property they clearly have no ownership interest" in. (Reformation Emails, ECF No. 37-5, PageID.706.) Further, it is elementary that an insured must have an insurable interest in the property it is insuring. (Policy Period 2022–2023, PageID.91); *A.B. Petro Mart, Inc. v. Ali T. Beydoun Ins. Agency, Inc.*, 892 N.W.2d 460, 465 (Mich. 2016); *Agric. Ins. Co. v. Montague*, 38 Mich. 548, 551 (Mich. 1878).

8

Moreover, the aerial images of the property show that the Brewery has separate additions attached to it, all of which could qualify as the rear building. (ECF No. 38-2, PageID.754-55.) Wescott's deposition testimony supports this notion:

> Q: All right. So . . . you originally only leased the brewery?
> A: When Lucky Girl Brewing leased the premises, it was a blighted feed store. Lucky Girl Brewing Company added two new pieces to this building. One was a brewery . . . and the other was a dining room. . . .
> . . .
> Q: 34016 M-43 Rear Building. . . . Which building is that?
> A: That is the brewery itself that I built onto the existing building at 34016 M-43.
> . . .
> A: The brewery – the brewery is attached to the tap room. I had originally leased the tap room. I built the brewery onto it.

(Wescott Dep. 12-13, 23-24.) Lucky Girl obtained insurance on Location: 001 and Location: 002 simultaneously, which suggests that they are attached or a part of the same main building.

Also, according to their dictionary definitions, one would not use "building" to describe a "stand." "Building" and "farm stand" are not defined in the Policy. But generally, "building" is defined to mean "[a] structure with walls and a roof, esp. a permanent structure." *Building*, Black's Law Dictionary (12th ed. 2024). "Stand" is defined to mean "a small often open-air structure for a small retail business" like a "vegetable stand." *Stand*, Merriam-Webster's Dictionary, https://perma.cc/7Q6Y-ET4P (last visited May 21, 2025). Thus, one would not use "building" to describe a "stand."

Given these conflicting interpretations, the parties' intent must be determined to resolve this matter. The record, currently before the Court, is inadequate to do so. The Court is left with a material dispute regarding the key issue in this case—coverage under the Policy. Thus, the jury should decide such a question of fact and determine the meaning of the Policy and intent of the parties.

## IV. CONCLUSION

When viewing the facts in the light most favorable to Lucky Girl, the Court finds the language of the Policy to be ambiguous, which creates a genuine dispute of material fact that should be left to the jury to decide. Accordingly, the Court will deny Sentinel's motion for summary judgment regarding Lucky Girl's breach of contract claim but will grant Sentinel's motion to dismiss Lucky Girl's negligence claim.

An order will enter consistent with this Opinion.


Dated: May 23, 2025                    /s/ Paul L. Maloney
                                       PAUL L. MALONEY
                                       UNITED STATES DISTRICT JUDGE